UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LISA McLACKLAN and KENNETH McLACKLAN,**

        **Plaintiffs,**

v.                                Case No:  6:11-cv-1465-Orl-28DAB

**WESTFIELD INSURANCE COMPANY,**

        **Defendant.**
_____/

## ORDER

This case involves a dispute over uninsured motorists coverage under a commercial automobile insurance policy. Currently before the Court is the Partial Motion for Summary Judgment as to Count I (Doc. 21) filed by Plaintiff Kenneth McLacklan ("McLacklan"), Defendant's Opposition (Doc. 25), Defendant's Motion for Summary Judgment (Doc. 22), and McLacklan's Opposition/Reply (Doc. 24).

### I.  Background

McLacklan had an automobile accident in March[1] 2010 while driving a Volkswagen Passat. At that time, McLacklan owned a construction company, Turn Lane, Inc., that had multiple work vehicles, including dump trucks and a 1999 Ford pickup truck ("the Work Truck").[2]  (McLacklan Dep. at 8, 71). Prior to the accident, McLacklan had driven the Work Truck from Florida to a transmission repair shop in Georgia to drop it off for transmission repairs. (Id. at 8-10). The same repair shop had

---

[1] The accident occurred either in the late evening of March 13, 2010 or in the early morning hours of March 14, 2010.

[2] The Work Truck was titled in the name of Turn Lane, Inc. (McLacklan Dep. at 8).

previously repaired several transmissions for McLacklan. (Id. at 10). While in Georgia, McLacklan looked at a Volkswagen Passat that he had found for sale from a private individual near the repair shop. (Id. at 18, 21). McLacklan purchased the Passat as a gift for his wife. (Id. at 78-79). Although on previous trips to the transmission shop he had returned to Florida by plane or with a loaner vehicle from the shop, (id. at 20), on this occasion he used the Passat to drive from the shop after dropping off the Work Truck, (id. at 22). During the return trip the Passat crashed into an object in the road, (id. at 23-24), and McLacklan claims to have suffered bodily injuries as a result of that accident.

At the time of the accident, Turn Lane, Inc. had a commercial automobile insurance policy ("the Policy") through Defendant, Westfield Insurance Company ("Westfield"). (Policy, Ex. A to Doc. 22). The Policy provided uninsured motorists coverage for an "insured," with an "insured" defined in relevant part as "[a]nyone . . . 'occupying' a covered 'auto' or *a temporary substitute for a covered 'auto*.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, 'loss' or destruction." (Id. at 28-29 (emphasis added)). McLacklan submitted a claim under the Policy for uninsured motorists coverage, but Westfield denied the claim.

The crux of the parties' disagreement is whether the Passat involved in the accident was a "temporary substitute" for the Work Truck.[3] Both sides have moved for summary judgment on the basis of this narrow coverage issue.[4]

---

[3] Westfield admits that the Work Truck was a covered auto under the Policy. (Def.'s Mot. Summ. J. at 7).

[4] In particular, McLacklan seeks a declaratory judgment that (1) he is entitled to recover as an "insured" under the Policy's uninsured motorists coverage, (2) the coverage amount is a nonstacked amount of $1 million, and (3) he is entitled to recover

2

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether

---

the costs of the declaratory judgment action. Westfield admitted that it issued the Policy with uninsured motorists coverage of $1 million, (Answer, Doc. 12 ¶ 2), and has not otherwise opposed McLacklan's Motion with respect to the coverage amount or costs. The Court will not further address the coverage amount or costs in this Order; McLacklan may pursue the issue of costs in accordance with Local Rule 4.18.

the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

### III.     Analysis

In Florida, the construction of an insurance policy is a question of law for the court. E.g., Storfer v. Guar. Trust Life Ins. Co., 666 F.3d 1277, 1279 (11th Cir. 2012); Jones v. Utica Mut. Ins. Co., 463 So. 2d 1153, 1157 (Fla. 1985). "'If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.'" State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569-70 (Fla. 2011) (quoting Travelers Indem. Co. v. PCR, Inc., 889 So. 2d 779, 785 (Fla. 2004). "[T]he traditional rule followed in Florida . . . requires that policy language be read as it would be understood by reasonable people, i.e.[,] given its plain and ordinary meaning." State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., 678 So. 2d 397, 401 (Fla. 4th DCA 1996); see also, e.g., Auto-Owners Ins. Co. v. Above All Roofing, LLC, 924 So. 2d 842, 847 (Fla. 2d DCA 2006).

Westfield argues that the Passat was not a "temporary substitute" for the Work Truck because McLacklan was not using the Passat for Turn Lane, Inc. work activities and because he owned the Passat and had "no intention for the vehicle to be 'discarded' once the repair was complete to the [Work Truck]." (Def.'s Mot. Summ. J. at 10). McLacklan, however, argues that the Passat was a "temporary substitute" for the Work Truck because he bought the Passat for personal use and temporarily used it for official Turn Lane, Inc. business while the Work Truck was in the repair shop.

4

While the Policy does not define "temporary substitute," Westfield relies heavily on <u>Duncan Auto Realty, Ltd. v. Allstate Ins. Co.</u>, 754 So. 2d 863 (Fla. 3d DCA 2000), to support its position that the Passat could not be a temporary substitute because McLacklan did not intend to "discard" it once the Work Truck had been repaired. In <u>Duncan</u>, the Florida Third District Court of Appeal ruled that an auto dealership's truck that was being test-driven by an insured at the time of the subject accident did not amount to a "temporary substitute auto" under the insured's insurance policy. 754 So. 2d at 865. The court explained that "the word 'temporary' in the policy's 'temporary substitute auto' clause means that a substituted vehicle's use is to be of limited duration, at the conclusion of which the substitute vehicle is to be discarded, and the named vehicle is to resume its usual function." <u>Id.</u> The court found that the insured "would have immediately traded in the insured truck and used the newly purchased truck as its permanent replacement" and therefore concluded that the truck "was not a temporary substitute vehicle but rather a prospective permanent replacement vehicle."[5] <u>Id.</u> (emphasis omitted).

While Westfield seizes on the <u>Duncan</u> court's use of the word "discarded" to suggest that a *temporary* substitute by definition cannot be an automobile that McLacklan owns, the <u>Duncan</u> court's analysis of the word "temporary" did not focus on

---

[5] This was one of several independent grounds on which the <u>Duncan</u> court found that the vehicle was not a temporary substitute. The court also reasoned that because the insured used the truck for a routine test drive, the truck was not "performing a function that the disabled insured vehicle would have been performing but for its temporary disability," and therefore could not be a "temporary substitute auto." <u>Duncan</u>, 754 So. 2d at 865. Additionally, the policy at issue required that the vehicle be used "with the permission of its owner" as a temporary substitute and the court noted that the insured did not have permission to use the vehicle for business purposes. <u>Id.</u> at 864, 865.

mere ownership. Instead, the court focused on the insured's intent to use the test-drive truck as a permanent replacement for his current work truck. Likewise, the proper inquiry under the Policy's plain meaning here is not on ownership but on whether McLacklan intended to use the Passat on a temporary basis to perform functions that the Work Truck otherwise would have performed. If Westfield wished to restrict "temporary substitutes" to vehicles not owned by an "insured," it could have drafted the Policy to contain such an exclusion.[6] The Passat was a "temporary substitute" under the Policy as written if McLacklan intended to use it to replace the Work Truck only for a limited duration while the Work Truck was under repair.

Unlike in Duncan, McLacklan did not intend to use the Passat as a replacement for the Work Truck for an extended period. McLacklan testified that he bought the Passat with the intention of giving it to his wife for her personal use. (McLacklan Dep. at 78-79). Moreover, Westfield itself claims that the Passat "was purchased as a gift to [McLacklan's] wife" and that "it was purchased . . . [with] the specific intent of use by his wife." (Def.'s Mot. Summ. J. at 10, 11). Accordingly, there is no dispute that even though McLacklan owned the Passat, he did not intend to use it to replace the Work Truck for more than a temporary period.

Westfield also argues that the Passat was not a temporary substitute because the Passat was not "performing a function that the disabled insured vehicle would have been performing but for its temporary disability." Duncan, 754 So. 2d at 865. The Work

---

[6] Notably, the Policy does exclude from uninsured motorists coverage any bodily injury sustained by an "individual *Named Insured* while 'occupying' . . . a vehicle owned by that individual *Named Insured* that is not a covered 'auto,'" (Policy, Ex. A to Doc. 22, at 29 (emphasis added)), but the Policy does not contain a similar exclusion for vehicles owned by an "insured." Although Turn Lane, Inc. is a "Named Insured," McLacklan is not. (Id. at 4).

6

Truck was titled in the name of Turn Lane, Inc., and McLacklan testified that he used it for business activities, such as "[g]etting materials, getting employees to work . . . moving equipment around, [and] things of that nature." (McLacklan Dep. at 13). McLacklan would sometimes leave the Work Truck on job sites overnight, and he generally did not use the Work Truck for personal errands. (Id. at 13-14, 77).

Westfield is correct that McLacklan must have used the Passat for a function that the Work Truck would have performed but for its temporary disability in order for the Passat to be a "temporary substitute" under the Policy. See Duncan, 754 So. 2d at 865. However, Westfield offers little more than conclusory statements to support its argument that the Passat was not performing such a function.

Westfield claims that the Passat was not performing a function the Work Truck otherwise would have performed because "[t]he Passat was not being used for Turn Lane, Inc. work activities," (Def.'s Mot. Summ. J. at 10; see also Def.'s Opp. Summ. J. at 4 (arguing that the Passat was not a substitute for the Work Truck because the Passat "was not being used for a work related activity")). To that end, Westfield states that McLacklan "was not using the Passat to inspect construction sites, transport workers or any of the other daily activities performed in his job at Turn Lane[,] Inc." (Def.'s Opp. Summ. J. at 4).

McLacklan testified, however, that he drove the Work Truck to the repair shop in Georgia and that his primary purpose in doing so was to have the transmission fixed. (McLacklan Dep. at 79). Westfield has not attempted to challenge that testimony or otherwise contest that driving *to* the repair shop was within the scope of the Work Truck's functions. The Court cannot conclude that driving back *from* the repair shop

was not also a function that the Work Truck would have performed but for the fact that it was out of service for repairs.

Westfield nonetheless attempts to establish that the Passat was not a substitute for the Work Truck by pointing out that McLacklan "did not even purchase the Passat for his own use, [but] instead it was purchased as a gift to his wife," (Def.'s Mot. Summ. J. at 10), and that "had the Ford pickup truck not been disabled then [McLacklan] would not have been driving the Passat back from Georgia to Florida," (Def.'s Opp. Summ. J. at 4). But these statements suggest the opposite of what Westfield contends. The fact that McLacklan intended the Passat as a gift for his wife and not for his own use shows only that he did not intend to use the Passat as substitute for the Work Truck for an extended period. Claiming that McLacklan would not have been driving the Passat back from Georgia if the Work Truck had not been disabled suggests exactly what McLacklan has argued—that he used the Passat as a substitute for the Work Truck, which at the time was, as required under the Policy's terms, out of service for repair.

In sum, McLacklan has presented uncontested evidence that he used the Work Truck to drive to a repair shop in Georgia to have the transmission fixed and that he used the Passat to return from that repair shop while also intending ultimately to give the Passat to his wife for her use. Accordingly, there is no genuine dispute of material fact as to whether the Passat was a "temporary substitute" for the Work Truck under the Policy. Westfield's Motion for Summary Judgment must therefore be **DENIED** and McLacklan's Motion for Partial Summary Judgment must be **GRANTED**.

## IV.     Conclusion

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** that McLacklan's Motion for Partial Summary Judgment (Doc. 21) is **GRANTED** and Westfield's Motion for Summary Judgment (Doc. 22) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 10, 2013.

---
JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record